IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VANCE COLE CHESNUT, | § | Bankruptcy No. 03-41050-DML-13 |
| | § | |
| Debtor. | § | |
| _____ | § | |
| | § | |
| MARK T. BROWN, ET AL., | § | |
| | § | |
| Appellants, | § | |
| | § | |
| VS. | § | NO. 4:08-CV-578-A |
| | § | |
| VANCE COLE CHESNUT, | § | |
| | § | |
| Appellee. | § | |

MEMORANDUM OPINION
and
ORDER

This case is before the court as an appeal from rulings made by the bankruptcy court in a memorandum opinion signed July 29, 2008. Appellants are Mark T. Brown and Templeton Mortgage Corporation,[1] and appellee is Vance Cole Chesnut, the Debtor in bankruptcy, ("Debtor"). An amicus curiae brief in support of Debtor's position was filed by Tim Truman, Chapter 13 Trustee. After having reviewed the briefs, pertinent parts of the record, and applicable authorities, the court has concluded that the rulings of the bankruptcy court should be affirmed.

I.

The Rulings From Which the
Appeal Was Taken

---

[1]Appellants are related entities. For convenience, the court refers to them collectively as "Templeton" or "appellants."

By the July 29, 2008, memorandum opinion, the bankruptcy court granted a motion filed by Debtor on April 22, 2008, in his chapter 13 bankruptcy case to enforce his final chapter 13 plan ("Plan") and order confirming the Plan.[2] The bankruptcy court had confirmed the Plan by order signed December 8, 2004. The motion sought an order directing the release of the lien held by Templeton on the property titled in the name of Debtor's wife, Jacqueline Chesnut, ("Mrs. Chesnut") as her sole and separate property.

The bankruptcy court held that the res judicata effect of the order confirming the Plan prevents Templeton from maintaining that the lien should not be released because, Templeton maintains, the property to which it attaches ("Eastland County property") has been the separate property of Mrs. Chesnut at pertinent times. The gist of the bankruptcy court's ultimate ruling was expressed in its memorandum opinion as follows:

> [T]he court concludes that TMC and Brown are barred by the doctrine of res judicata and by reason of the Plan's binding effect from contending that the Lien should not be released because the Property belonged to Mrs. Chesnut as her separate property.
>
> . . . .
>
> Because the ownership of the Property was an issue that could have been raised prior to or at the time of confirmation of the Plan and because the issue was not otherwise posed to the court, the res judicata effect of confirmation prevents TMC from raising this issue now. . . .

R. at 20-21 (footnote omitted).

---

[2]Mrs. Chesnut joined in the April 22, 2008, motion. R. at 88.

II.

## The Issues Raised on Appeal

The five issues raised by Templeton on appeal are as follows:

> Issue No. 1. Whether the bankruptcy court erred in ordering the release of lien on property that was never found to be property of the bankruptcy estate.
>
> Issue No. 2. Whether the bankruptcy court erred in failing to conduct a trial of the still pending adversary proceeding, post-remand from the Fifth Circuit of Appeals, in which the Appellants' asserted defense is that the property in issue is not property of the bankruptcy estate.
>
> Issue No. 3. Whether the bankruptcy court erred because it lacks jurisdiction to order the release of a lien on property which is not property of the bankruptcy estate.
>
> Issue No. 4. Whether the bankruptcy court erred because the Debtor's chapter 13 plan did not give Appellants adequate notice that the Debtor intended by his plan to require Appellants to release their lien on property that was not property of the bankruptcy estate.
>
> Issue No. 5. Whether the bankruptcy court erred in finding that the doctrine of res judicata barred Appellants from arguing that their liens should not be released because the property is not property of the bankruptcy estate.

Appellants' Br. at 4.

III.

## Pertinent Background[3]

---

[3] Additional background information is found in the opinions reported at In re Chesnut, 422 F.3d 298 (5th Cir. 2005), In re Chesnut, 311 B.R. 446 (N.D. Tex. 2004), and In re Chesnut, 300 B.R. 800 (Bankr. N.D. Tex. 2003).

By deed dated March 25, 1999, 2.52 acres of land in Eastland County, Texas, were conveyed to Mrs. Chesnut, with the recitation in the deed that they were being conveyed to her "as her sole and separate property and estate." Resp'ts' Ex. 1 at 13th p. Debtor and Mrs. Chesnut were husband and wife at that time, and had been since September 15, 1996. Docket 1 in Adv. at 2 & Ex. A.[4] Part of the purchase price was a $26,000 promissory note given by Mrs. Chesnut to the grantor, Brooksie Nell Hodges ("Hodges"), Resp'ts' Ex. 7 at 5th p., which was secured by a vendor's lien retained in the deed and a deed of trust lien, Resp'ts' Ex. 1 at 13th p.; Resp'ts' Ex. 7 at 5th p.; Resp'ts' Ex. 9. In January 2002, Templeton acquired ownership from Hodges of the promissory note and the related liens. Resp'ts' Ex. 6.

Because of default in payments on the promissory note, Templeton accelerated payment of the balance owed, and gave notice of a trustee's foreclosure sale to be conducted under the authority of the deed of trust on February 4, 2003. Resp'ts' Ex. 13 at 3rd p. In an attempt to prevent the foreclosure sale, Debtor filed his case under chapter 13 on January 31, 2003. Resp'ts' Ex. 2 at 3rd p. Mrs. Chesnut was not named as a debtor. Id. A copy of Debtor's petition was sent to counsel for Templeton on the date of filing. Resp'ts' Ex. 3; Tr. of Aug. 5,

---

[4]To the extent necessary, the court refers to documents that were not designated for inclusion in the record on this appeal but are contained in Adversary No. 03-04248-dml-13. References to those items will be by docket number, as shown on the docket sheet of the adversary case, and the page number of the document to which reference is being made, i.e., "Docket No. ___ in Adv. at ____."

4

2003, Hr'g in Adv. at 40.[5]  Before proceeding further with the noticed foreclosure sale, Templeton obtained advice of counsel that Debtor did not have an interest in the property, that the foreclosure sale could be conducted as noticed, and that there was no need to obtain a ruling from the bankruptcy court that the sale would not be in violation of the automatic stay.  Tr. of Oct. 14, 2003, Hr'g in Adv. at 95; Tr. of Aug. 5, 2003, Hr'g in Adv. at 41-42.  The deed of trust foreclosure sale took place as noticed on February 4, 2003.  Resp'ts' Ex. 15.  Templeton was the successful bidder at the sale.  Id. at 2nd p.  The substitute trustee who conducted the sale conveyed the property to Templeton by a substitute trustee's deed dated February 4, 2003, id., which shows to have been acknowledged on March 25, 2003, id. at 3rd p.

On June 16, 2003, Debtor initiated Adversary No. 03-04248-dml-13 ("adversary case") in his chapter 13 case by filing his "Plaintiff's Original Complaint to Enjoin Actions Against Property in Violation of the Automatic Stay, for Declaratory Judgment, Restoration of Title and Motion for Sanctions and Contempt."  Docket No. 1 in Adv. at 1.  Debtor alleged that the Eastland County property was property of the community estate of his marriage to Mrs. Chesnut, id. at 2; and, he sought (1) a declaration that the February 4, 2003, foreclosure sale was void

---

[5]References are made in this memorandum opinion to the transcripts of hearings held August 5 and October 13, 2003, in the Adversary No. 03-04248-dml-13.  Copies of the transcripts are found in volume three in the record of the appeal to the Fifth Circuit that resulted in the opinion reported at In re Chesnut, 422 F.3d 298 (5th Cir. 2005).

5

as being in violation of the automatic stay, (2) a judgment directing Templeton to restore the legal title to the Eastland County property and correct the tax records of Eastland County, (3) a declaratory judgment that Templeton was in contempt of the automatic stay injunction, (4) compensatory damages, and (5) sanctions, including all reasonable attorneys' fees, costs, and punitive damages, id. at 7. Templeton answered the complaint by asserting, inter alia, that the Eastland County property was acquired as the sole and separate property of Mrs. Chesnut, who is not a debtor in the case, and that the property, therefore, was not property of Debtor's bankruptcy estate, with the consequence that the automatic stay was not violated by the foreclosure sale. Docket No. 6 in Adv. at 2-3.

On July 17, 2003, Debtor filed in his bankruptcy case a proof of claim purportedly for Templeton as his creditor, asserting that Debtor owed Templeton $22,000 for money loaned and that the debt was secured by collateral on Debtor's "Homestead." R. at 72. Templeton did not file a proof of claim; and, it has disclaimed the one Debtor filed in its name.

On August 5, 2003, the bankruptcy court conducted a hearing in the adversary case on the issue of whether sanctions should be imposed on Templeton for conducting the foreclosure sale after having learned of the existence of Debtor's bankruptcy case. Tr. of Aug. 5, 2003, Hr'g in Adv. at 5. During the course of the hearing, the bankruptcy court made clear that the hearing did not have as a goal the ultimate determination of title to the

6

property.  Id. at 64-65.  Rather, the bankruptcy court focused on whether Debtor had a colorable claim to the property that should have been resolved in the bankruptcy court before the foreclosure sale took place.  Id. at 65.  After hearing from three witnesses, the bankruptcy court decided to withhold a ruling until after the trial of the adversary case.  Id. at 71-72.

On August 28, 2003, Templeton (in the name of Mark T. Brown) filed a motion to modify co-debtor stay, seeking permission to begin state court collection activity against Mrs. Chesnut.  R. at 162.  Templeton alleged that:  "Vance Chesnut and Jacqueline Chesnut have conspired to file this case in bad faith in an attempt to avoid having separate property of Jacqueline Chesnut become property of the estate while still attempting to use Vance Chenut's [sic] bankruptcy filing to protect Jacqueline's assets."  Id. at 163.  On September 8, 2003, Debtor answered and objected to Templeton's motion.  Id. at 172.  Templeton withdrew the motion by a notice filed September 22, 2003.  Id. at 176.  So far as the court can determine, nothing in the record explains why this motion was filed or why it was withdrawn.

The trial of the adversary case was held October 14, 2003.  Tr. of Oct. 14, 2003, Hr'g in Adv. at 1.  The bankruptcy court continued to focus on whether Debtor had a "colorable claim" to the Eastland County property, id. at 90-91, that caused the foreclosure sale to be "at least a colorable violation of the stay," id. at 95, not on whether the property was a part of Debtor's bankruptcy estate.

7

The limited scope of the proceedings held August 5 and October 14 was confirmed in the memorandum opinion the bankruptcy court signed November 6, 2003, in which the bankruptcy court explained:

> It is not at this time the chore of the court to determine whether the Property was a community asset or separately owned by Mrs. Chesnut. The court need only decide whether Debtor had an interest in the Property which was protected by the automatic stay. If Debtor had rights respecting the Property which were adversely affected by Defendants' foreclosure, a violation of the stay occurred.

In re Chesnut, 300 B.R. 880, 886 (Bankr. N.D. Tex. 2003). In the memorandum opinion, the bankruptcy court imposed a $10,000 sanction on Templeton for its violation of the automatic stay,[6] and advised the litigants that after payment of the $10,000 sanction[7] Templeton "may seek relief from the automatic stay as to the [Eastland County] Property." Id. at 890. Also, the bankruptcy court ordered Templeton to reconvey the Eastland

---

[6]The bankruptcy court gave the following rationale for his conclusion that the deed of trust foreclosure sale violated the automatic stay:

> In the case at bar, the law of Texas determines whether Debtor had an interest in the Property. As admitted even by Defendants, Debtor had, at a minimum, an equitable interest in the Property. Furthermore, whether the Property belongs to the community and so is property of the estate is dependent on various facts. Therein lies the problem with Defendants' arguments. At best, from Defendants' perspective, the Property is *presumed* to be separately owned by Mrs. Chesnut. *See Teas,* 460 S.W.2d at 243. At worst, the Property is *presumed* to be community property. *See* TEXAS FAMILY CODE ANN. § 3.003.

In either case, whether the Property is part of Debtor's estate is a question of fact which must be adjudicated by a court. Debtor unquestionably has a viable claim that the Property was properly includible in his estate.

In re Chesnut, 300 B.R. 880, 887 (Bankr. N.D. Tex. 2003).

[7]Presumably, Templeton has paid the $10,000 sanction.

8

County property to Mrs. Chesnut.[8]  Id.  The rulings in the November 6, 2003, memorandum opinion were put in the form of a judgment signed by the bankruptcy judge on December 23, 2003. Docket No. 15 in Adv. at 1.

On the appeal by Templeton from the bankruptcy court's December 23, 2003, judgment, this court reversed the bankruptcy court by memorandum opinion and judgment signed July 1, 2004, and remanded to the bankruptcy court for further proceedings.  In re Chesnut, 311 B.R. 446, 450 (N.D. Tex. 2004).  This court's ruling was based on the court's conclusions that the evidence established as a matter of law that the Eastland County property was the separate property of Mrs. Chesnut and was not part of Debtor's bankruptcy estate and that, therefore, the automatic stay was not violated by the foreclosure sale.  Id. at 449-50.

On August 19, 2005, the Fifth Circuit reversed the July 1, 2004, judgment of this court and affirmed the December 23, 2003, judgment of the bankruptcy court.  The issue decided by the Fifth Circuit, as the court described it, was "whether the creditor violates the stay if, without permission of the bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim of right . . . ."  In re Chesnut, 422 F.3d 298, 300 (5th Cir. 2005).  The holding of the Fifth Circuit was that, because Debtor had an arguable interest in the Eastland County

---

[8]Apparently, following the decision of the Fifth Circuit, Templeton conveyed the Eastland County property back to Mrs. Chesnut.

9

property, Templeton violated the automatic stay by not causing there to be a resolution in the bankruptcy court of whether the arguable interest was a real interest before foreclosing the lien on the property. The Fifth Circuit did not decide the issue of ownership of the property or whether the property was part of Debtor's bankruptcy estate, saying "[w]here seized property is arguable property, it is no answer for the creditor to defend the foreclosure by claiming that the property was not properly covered by the stay." Id. at 304.

While the rulings of the bankruptcy court in its December 23, 2003, final judgment in the adversary case were on appeal to this court, but before this court ruled in favor of Templeton, Debtor filed on March 3, 2004, his Final Chapter 13 Plan and Motion for Valuation. R. at 62. It showed Templeton to be a secured creditor of Debtor, that the collateral for Templeton's claim was "HOMESTEAD," that Templeton's claim was the amount of $22,000, and that the value of the collateral was $22,000.[9] Id. The Plan provided that each secured creditor's lien would be released after payment through the Plan of the creditor's allowed claim, and that all secured creditors shall execute any documentation necessary to release their liens upon payment of their allowed secured claim. Id. at 62-63. Templeton did not object to confirmation of the Plan. Id. at 66.

---

[9]The part of the Plan pertaining to Templeton's status as a creditor undoubtedly was predicated on the proof of claim Debtor filed in Templeton's name on July 17, 2003. Templeton consistently has maintained that it was not a creditor of Debtor.

After this court reversed the bankruptcy court's December 23, 2003, judgment on July 1, 2004, and while the appeal to the Fifth Circuit from this court's rulings was pending, the bankruptcy court confirmed the Plan and valuation by order signed on December 8, 2004. Id. at 66. There was no appeal from the confirmation/valuation order.

So far as the court can tell, no ruling was made by the bankruptcy court on any of the issues raised by the pleadings in the adversary case other than the rulings expressed in the December 23, 2003, judgment. The bankruptcy court has not directly ruled in any context on Templeton's contention, as asserted in its answer to Debtor's complaint by which the adversary proceeding was initiated, that the Eastland County property was the sole and separate property of Mrs. Chesnut. Apparently, the first time the issue of ownership of the Eastland County property was raised in the bankruptcy case after the August 19, 2005, ruling of the Fifth Circuit was during a hearing held on September 27, 2007, on an application filed by Debtor's attorney for approval of attorney's fees, when the following exchange occurred between counsel for Templeton and the bankruptcy judge:

> MR. OLSON: To look to the adversary proceeding, I think what's still pending in the adversary proceeding is the question as to whether this piece of property is property of the estate. And I think we would like to have an evidentiary hearing and a ruling on that. That, I think, would determine in large part.

11

> THE COURT: You can see what you want to do on that when he files his motion, and we'll tee it up. . . .

Id. at 105.

The record indicates that $22,000 was paid to Templeton pursuant to the terms of the Plan. Next came the May 12, 2008, hearing on Debtor's April 22, 2008, motion to enforce the Plan and order confirming the Plan, which led to the July 29, 2008, ruling of the bankruptcy court that is now on appeal to this court. The bankruptcy court expressed the view at the hearing that "at this point, [Templeton is] a day late and a dollar short on litigating the issue of whether or not this was in fact not community property, but was in fact Mrs. Chesnut's property." Id. at 128. Thereafter, the following exchange occurred between counsel for Templeton and the bankruptcy judge:

> MR. OLSON: . . . [W]hen Mr. Morrison was here a few months ago seeking fees, I said at the time that that adversary proceeding was still pending and that that was the vehicle to deal with that, and that we still wanted to litigate that issue. And it hasn't been said or dealt with, and the Court may not intend to.
>
> THE COURT: I now, the -- well, I'm not going to quarrel with you. Let's move along. I want to get on with this. I've got another case that's going to take me all day. So let's proceed with this.

Id. at 129.[10]

---

[10] That the bankruptcy judge and counsel for Templeton had conflicting views as to the proper scope of the adversary case is evident from the record.

Counsel for Templeton seems to think that its answer to Debtor's complaint in the adversary case was sufficient to require the bankruptcy court to decide whether the Eastland County property was the separate property of Mrs. Chesnut, thus causing Templeton's lien on the property to be free of the

(continued...)

12

## IV.

## Analysis of Templeton's Issues on Appeal

A.  The Adversary Case was Concluded.

An ingredient of appellants' Issue No. 2 is the false premise that the Fifth Circuit remanded the case to the bankruptcy court for further proceedings. The first opinion the Fifth Circuit published in In re Chesnut did conclude with the following language:

> The judgment of the district court is REVERSED and the judgment of the bankruptcy court is AFFIRMED; and the case is REMANDED to the bankruptcy court for further proceedings not inconsistent with this opinion, including, if necessary, the determination of whether the Eastland property is Mrs. Chesnut's separate property or her and [Debtor's] community property.

Appellants' Br., App. at p. 13 of Aug. 19, 2005, Op. of Fifth Circuit). However, on October 17, 2005, the Fifth Circuit revised its opinion with the one published at 422 F.3d 298, in which it changed the language quoted above to the following:

---

[10](...continued)
administration of Debtor's chapter 13 bankruptcy. R. at 94 (where Templeton alleged in its response to the April 22, 2008, motion that "the issue of whether the [Eastland County property] is property of this bankrupt estate is presently before this Court in adversary proceeding No. 03-42148.") Similar contentions are made in Templeton's brief on this appeal, Br. of Appellants at 5-6; Reply Br. at 2. Templeton's counsel took the bankruptcy court's comment at the September 27, 2007, hearing that "we'll tee it up," R. at 105, to be a commitment to go forward in the adversary case to decide the issue of ownership of the Eastland County property, Reply at 2.

On the other hand, the bankruptcy court made clear in its July 29, 2008, memorandum opinion that it disagreed, saying that the adversary proceeding did not directly present the issue of ownership of the Eastland County property and that the adversary proceeding required the court "only to decide whether Debtor had an interest in the [Eastland County property] which was protected by the automatic stay." R. at 16. In addition, the bankruptcy court expressed its belief that following the decision of the Fifth Circuit neither Debtor nor Templeton raised in the bankruptcy court the question of ownership of the Eastland County property. Id. at 7.

13

> The judgment of the district court is REVERSED and
> the judgment of the bankruptcy court is AFFIRMED.

In re Chesnut, 422 F.3d at 307.

Counsel for Templeton takes the position that he did not receive the revised opinion eliminating the remand feature. R. at 18 n.6; 121-22. Apparently, the bankruptcy judge did not make counsel aware of, or arrange for them to participate in, his communication to the Fifth Circuit urging the Fifth Circuit to change its opinion for the purpose of removing the remand feature. Id. at 122. Regardless of what prompted the Fifth Circuit to change its opinion or whether the bankruptcy judge's communication with the Fifth Circuit was proper, the final version of the Fifth Circuit's opinion eliminated the directive that the case was remanded to the bankruptcy court for further proceedings, including, if necessary, the determination of whether the Eastland County property is Mrs. Chesnut's separate property or her and Debtor's community property. Thus, to whatever extent Templeton contends that the bankruptcy court failed to comply with a directive of the Fifth Circuit, it is mistaken.

If Templeton maintains by Issue No. 2 that the pleadings in the adversary case imposed on the bankruptcy court an obligation to decide in that case whether the Eastland County property was property of the bankruptcy estate, the court can sympathize with Templeton and its counsel because the ruling of this court in its July 1, 2004, opinion reversing the bankruptcy court's December

14

23, 2003, judgment, was based on the belief of this court that a finding that the Eastland County property was the separate property of Mrs. Chesnut would be determinative of the issues raised in the adversary case. In re Chesnut, 311 B.R. at 450. The Fifth Circuit disagreed.

As noted above, the Fifth Circuit held that the adversary case was properly resolved by the bankruptcy court in Debtor's favor because, according to the Fifth Circuit, the record established that Debtor had an arguable claim of right to the property. In re Chesnut, 422 F.3d at 306. As did the bankruptcy court in its November 6, 2003, opinion, the Fifth Circuit ruled, in effect, that it was not required to determine whether the Eastland County property was property of Debtor's bankruptcy estate. The Fifth Circuit used "arguable claim of right" to the property, 422 F.3d at 300, in the same sense the "colorable claim to that piece of property" concept was used by the bankruptcy court in the October 14, 2003, hearing leading up to the bankruptcy court's November 6, 2003, opinion, Tr. of Oct. 14, 2003, Hr'g in Adv. at 90-91.

The decision of the Fifth Circuit and the December 23, 2003, decision of the bankruptcy court are predicated on the concept that, despite the clear language of 11 U.S.C. § 362,[11] the

---

[11]The potentially applicable subparts of 11 U.S.C. § 362, which defines the conduct that is stayed by the automatic stay, are § 362(a)(3), (4), and (5). The (3) and (4) subparts apply only if the property against which the conduct is directed is "property of the estate." Subpart (5) applies only if the property is "property of the debtor."

15

automatic stay prevented action by Templeton against the Eastland County property, even if Debtor has no ownership interest in the property and it was not property of the bankruptcy estate, so long as Debtor has, as the bankruptcy court put it, a colorable basis for claiming an interest in the property or, as the Fifth Circuit put it, an arguable claim of a right in the property.

Accepting, as the court must, the arguable claim of right/colorable interest concept, the court concludes that the November 6, 2003, memorandum opinion and December 23, 2003, judgment of the bankruptcy court in the adversary case finally concluded that adversary case. The complaint by which the proceeding was initiated did not directly seek an adjudication that Debtor had an interest in the Eastland County property or even that the Eastland County property was a part of Debtor's bankruptcy estate. Reduced to its core, his prayer for relief sought only an adjudication that the deed of trust foreclosure sale was void by reason of having been in violation of the automatic stay, and an order providing sanctions against Templeton, and compensation to Debtor, for the violation. The bankruptcy court decided those issues in favor of Debtor by its November 6, 2003, memorandum opinion and December 23, 2003, judgment. The Fifth Circuit affirmed those rulings.

While Templeton urged in its response to the complaint in the adversary case that he did not violate the automatic stay because the Eastland County property was the separate property of Mrs. Chesnut, the bankruptcy court and the Fifth Circuit both

made clear that the separate versus community character of the property was not determinative of, or even relevant to, the request for relief made by the adversary complaint.[12]  As a result, a reasonable argument can be made that the adversary case was not a "still pending adversary proceeding" following the decision of the Fifth Circuit.

B.   <u>The Remaining Issues Raised by Templeton on Appeal Have, in Effect, Been Determined Against Templeton by the Fifth Circuit's Opinion on the First Appeal</u>.

Accepting, as it must, the conclusion expressed by the Fifth Circuit in <u>In re Chesnut</u> that Debtor had a sufficient claim of right to the Eastland County property to cause the foreclosure of its lien on the property to be a violation of the automatic stay, further conclusions the court logically must reach are that (1) the Debtor had a sufficient claim of right to the Eastland County property to cause Templeton and the property to be subject to the bankruptcy court processes in Debtor's chapter 13 case; (2) the notice given to Templeton of the Plan caused Templeton to have an obligation to object to the Plan if it wished to avoid its confirmation; (3) if Templeton wished to complain of the order confirming the Plan, it was obligated to appeal from the order; and, (4) if the elements of res judicata exist, the res judicata effect of the order confirming the Plan forecloses any contention

---

[12]Had Templeton filed a counterclaim in the adversary case urging relief from the automatic stay by a declaration that the Eastland County property was the separate property of Mrs. Chesnut in which Debtor did not have an interest, perhaps that issue would have been directly presented for decision, but no such counterclaim was filed.

of Templeton at this time that the bankruptcy court erred in ordering the release of Templeton's lien on the property.

The Fifth Circuit has joined other circuit courts in holding that a bankruptcy court's confirmation order is to be given res judicata effect if the essential elements exist. <u>Republic Supply Co. v. Shoaf</u>, 815 F.2d 1046, 1051, 1054 (5th Cir. 1987). The elements essential to res judicata are, as the bankruptcy court noted, "identity of the parties, a prior judgment by a court of competent jurisdiction, that the judgment is final on the merits and that the cause of action is the same." R. at 21 n.13; <u>see also</u> <u>Republic Supply Co.</u>, 815 F.2d at 1051.

Again accepting the ruling of the Fifth Circuit in <u>In re Chesnut</u>, the conclusion follows that Debtor and Templeton were parties to both the Plan and confirmation order proceedings and the instant proceeding initiated by Debtor's April 22, 2008, motion to enforce the Plan and confirmation order. The prior judgment (confirmation order) was rendered by a court of competent jurisdiction and is a final judgment on the merits of the subject matters of the order, one of which was the release of Templeton's lien on the Eastland County property once it received the payment contemplated by the Plan.[13] The issues are

---

[13] The court is not faced with an argument that there is not an identity of issues due to the failure of the Plan or the order confirming it to make reference to the Eastland County property. The confirmation order does not purport to identify the property; and, the Plan limits its description of the collateral held by Templeton to the word "HOMESTEAD." R. at 62. The record makes clear that the Eastland County property was not Debtor's homestead. Inasmuch as Templeton failed to make such an argument in its brief, the court does not give further consideration to the discrepancy between the Plan's

(continued...)

identical, i.e., whether Templeton had an obligation to release its lien once it received the payment contemplated by the Plan.

An effect of the ruling of the Fifth Circuit in <u>In re Chesnut</u> is that the fact that the Eastland County property has never been found to be a property of Debtor's bankruptcy estate is not relevant to the outcome. For that reason, and the other reasons stated above, the court is unable to rule in favor of Templeton on its Issues Nos. 1, 3, 4, or 5.

V.

<u>Order</u>

For the stated reasons,

The court ORDERS that the rulings made by the bankruptcy court in its July 29, 2008, memorandum opinion be, and are hereby, affirmed.

SIGNED January  6 , 2009.

         /s/ John McBryde
       JOHN McBRYDE
       United States District Judge

---

[13](...continued)
description of the collateral and the description of the property from which Debtor seeks a release of lien.